## In re Arturo PUENTE-Salazar, Respondent

### File A36 582 517 - Huntsville

*Decided September 29, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

A conviction for the crime of driving while intoxicated under section 49.04 of the Texas Penal Code, which is a felony as a result of an enhanced punishment, is a conviction for a crime of violence and therefore an aggravated felony under section 101(a)(43)(F) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(F) (Supp. II 1996).

Todd Keller, Esquire, Huntsville, Texas, for respondent

Lisa Brodyaga, Esquire, Harlingen, Texas, for amicus curiae

Richard S. Fischer, Esquire, Nacogdoches, Texas, for amicus curiae

Barbara Hines, Esquire, Austin, Texas, for amicus curiae

Mary A. Kenney, Esquire, San Antonio, Texas, for amicus curiae

Donald W. Cassidy, Deputy District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, VILLAGELIU, COLE, MATHON, GUENDELSBERGER, JONES, and MOSCATO, Board Members. Concurring Opinion: GRANT, Board Member, joined by FILPPU, Board Member. Dissenting Opinion: ROSENBERG, Board Member.

JONES, Board Member:

The respondent timely appeals the Immigration Judge's decision finding him removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as a result of his conviction for an aggravated felony. The respondent's request for oral argument was granted and oral argument was held on November 3, 1998. Several briefs were filed on behalf of the respondent. An amicus brief also was filed in support of the respondent's position by counsel for the Lawyers' Committee for Civil Rights Under Law of Texas, American

Immigration Lawyers Association, Refugio Del Rio Grande, and the National Immigration Project of the National Lawyers Guild. The Immigration and Naturalization Service promptly responded to all of the briefs submitted. We have considered all of the briefs submitted.[1] The appeal will be dismissed.

## I. BACKGROUND

The respondent, a native and citizen of Mexico, entered the United States as a lawful permanent resident on February 25, 1979. On October 31, 1997, the respondent was convicted in the 64th District Court of Hale County, Texas, of the offense of driving while intoxicated ("DWI") and was sentenced to confinement for a period of 5 years. The respondent was placed in removal proceedings by the Service on March 11, 1998. At the merits hearing before the Immigration Judge, the respondent denied all of the allegations on the Notice to Appear (Form I-862) and denied the charge of removability. The Immigration Judge determined that the record of conviction presented by the Service supported the allegation regarding the respondent's DWI conviction and sentence to confinement of 5 years. Further, the Immigration Judge found that, based on this evidence, the respondent had been convicted of an aggravated felony as charged by the Service. Finally, the Immigration Judge concluded that even though the respondent was a lawful permanent resident, he was statutorily ineligible for any form of relief as a result of his aggravated felony conviction. The respondent was ordered removed from the United States to Mexico.

## II. ISSUES PRESENTED

Two issues are presented on appeal. The first is whether the respondent's conviction under the Texas DWI statute is a conviction for a crime of violence, and thus an aggravated felony. The second is whether the Board's precedent decision, *Matter of Magallanes,* Interim Decision 3341 (BIA 1998), controls with respect to a Texas DWI conviction.

## III. RESPONDENT'S POSITION ON APPEAL

The respondent argues that the Texas DWI statute encompasses con-

---

[1]After considering the timeliness of each brief and the Service's objection to the post-hearing brief submitted on behalf of the respondent, we find that all parties have had ample opportunity to respond to the arguments presented. We will consider all of the briefs submitted.

duct that is less than that required for an "aggravated felony" under the Arizona law reviewed in *Matter of Magallanes, supra*. He points out that the Texas DWI statute requires only the operation, but not necessarily the driving, of a motor vehicle. The respondent claims that the Texas law should be treated as a divisible statute, as it is too broad to support a crime of violence in all instances. The respondent contends that because we did not address the phrase, "or be in actual physical control of any vehicle," that is part of the Arizona statute considered in *Matter of Magallanes*, that decision should not apply to Texas DWI convictions. He alleges further that, in *Magallanes*, we misread the language in *Matter of Alcantar*, 20 I&N Dec. 801 (BIA 1994), and other case law, in defining what we believe to be "substantial risk." According to the respondent, we have equated "potential of resulting in harm" and "serious risk of physical injury" with "substantial risk." He also asserts that the DWI offense under Texas law does not always satisfy the test for a crime of violence set forth in 18 U.S.C. § 16(b) (1994).

The respondent argues further that, for purposes of 18 U.S.C. § 16(b), it must be established that the force that "may be used in the course of committing the offense" is accompanied by a specific intent to use such force. He maintains that a DWI conviction under Texas law does not require specific intent and therefore does not satisfy the test set forth in § 16(b).

Finally, the respondent argues that, under Texas law, there is a different, additional provision that renders DWI an aggravated offense, namely, a *deadly weapon finding* on *a DWI conviction*, where the potential for violence must be proved. *See* Tex. Penal Code Ann. § 1.07(17) (West 1997). He argues that a vehicle is not per se a deadly weapon, as it was not designed to cause death or serious bodily injury.

## IV. SERVICE'S POSITION ON APPEAL

The Service argues that the analysis set forth in our precedent decision *Matter of Magallanes, supra*, applies to the Texas DWI statute at issue here, which covers acts that amount to less than actual driving. According to the Service, even though the Board did not address the fact that the respondent in *Magallanes* may have been doing something less than actually driving, the decision clearly stated that all the conduct described under the Arizona statute constitutes a crime of violence within the meaning of the Act. The Service also contends that, under Texas law, the punishable conduct of "operating" a vehicle under the influence requires, at a minimum, that a person take action that would affect the functioning of the vehicle in a manner that would enable the vehicle's use. *See Denton v. State*, 911 S.W.2d 388 (Tex. Crim. App. 1995).

Furthermore, the Service disagrees with the respondent's conclusion that because his conviction does not include an affirmative deadly weapon

finding it is not a crime of violence. Finally, the Service supports the Board's conclusion in *Magallanes* that a DWI offense falls within the definition of a "crime of violence" found in 18 U.S.C. § 16(b), and that the nature of the crime involves a substantial risk that physical force may be used against the person or property of another during the commission of the offense.

## V. RESPONDENT'S CONVICTION

On October 31, 1997, the respondent was convicted in the 64th District Court of Hale County, Texas, of the offense of driving while intoxicated ("DWI") under section 49.04 of the Texas Penal Code Annotated and was sentenced to confinement for a period of 5 years. The respondent was sentenced under the enhanced offenses and penalties provision of section 49.09(b) of the Texas Penal Code Annotated, which renders a misdemeanor DWI offense a felony in the third degree. A DWI offense under section 49.04 is enhanced to a third degree felony conviction only if the evidence demonstrates the elements necessary under section 49.09(b), which requires two prior convictions for operating a motor vehicle, aircraft, or watercraft while intoxicated. These two statutory sections provide, in pertinent part, as follows:

Driving While Intoxicated

(a) A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place.

(b) Except as provided by Subsection (c) and Section 49.09, an offense under this section is a Class B misdemeanor, with a minimum term of confinement of 72 hours.

(c) If it is shown on the trial of an offense under this section that at the time of the offense the person operating the motor vehicle had an open container of alcohol in the person's immediate possession, the offense is a Class B misdemeanor, with a minimum term of confinement of six days.

Tex. Penal Code Ann. § 49.04 (West 1997).

Enhanced Offenses and Penalties

If it is shown on the trial of an offense under Section 49.04, 49.05, or 49.06 that the person has previously been convicted two times of an offense relating to the operating of a motor vehicle while intoxicated, an offense of operating an aircraft while intoxicated, or an offense of operating a watercraft while intoxicated, the offense is a felony of the third degree.

Tex. Penal Code Ann. § 49.09(b) (West 1997).

Section 12.34 of the Texas Penal Code Annotated defines the term of imprisonment for an individual adjudged guilty of a third degree felony. The provision states as follows:

Third Degree Felony Punishment

(a) An individual adjudged guilty of a felony of the third degree shall be punished by imprisonment in the institutional division for any term of not more than 10 years or less than 2 years.
b) In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $10,000.

Tex. Penal Code Ann. § 12.34 (West 1997).

## VI. ANALYSIS

We note at the outset that the definition of an aggravated felony, as set forth at section 101(a)(43) of the Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. II 1996), has been the subject of numerous amendments since its introduction in 1988. The definition was most recently amended by section 321 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-628 ("IIRIRA"), which provides that the "amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred." Inasmuch as our consideration of this appeal constitutes an "action," the current definition applies. *See Matter of Batista-Hernandez,* 21 I&N Dec. 955 (BIA 1997).

### A. Crimes of Violence As Defined in 18 U.S.C. § 16

Section 101(a)(43)(F) of the Act includes in the definition of an aggravated felony "a crime of violence (as defined in section 16 of title 18, United States Code, but not including a purely political offense) for which the term of imprisonment [is] at least 1 year." *See Matter of S-S-,* 21 I&N Dec. 900 (BIA 1997).

The term "crime of violence" is defined at 18 U.S.C. § 16 as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The respondent and the Service agree that the Texas DWI statute, sec-

tion 49.04 of the Texas Penal Code Annotated, does not include as an element the use, attempted use, or threatened use of physical force against the person or property of another. Therefore, 18 U.S.C. § 16(a) is inapplicable to this case. The remaining issue is whether the conviction satisfies the test articulated at 18 U.S.C. § 16(b).

## B. Application of 18 U.S.C. § 16(b)

In determining whether an offense is a crime of violence under 18 U.S.C. § 16(b), we apply the "generic" or "categorical" approach. In other words, analysis under this section requires, first, that the offense be a felony, and if it is, that the nature of the crime as elucidated by the generic elements of the offense be such that its commission would ordinarily present a risk that physical force would be used against the person or property of another, irrespective of whether the risk develops or the harm actually occurs. *See Matter of Palacios*, 22 I&N Dec. 3373 (BIA 1998); *Matter of Alcantar, supra*, at 812 (citing *United States v. Marzullo*, 780 F. Supp. 658, 662-63 n.8 (W.D. Mo. 1991)); *see also United States v. Jackson*, 986 F.2d 312 (9th Cir. 1993); *United States v. Sherman*, 928 F.2d 324 (9th Cir.), *cert. denied*, 502 U.S. 842 (1991). We need only consider the fact that the respondent was convicted and the inherent nature of his offense in determining whether a crime satisfies the test articulated at 18 U.S.C. § 16(b). *See United States v. Velazquez-Overa*, 100 F.3d 418, 420-21 (5th Cir. 1996), *cert. denied*, 529 U.S. 1133 (1997). Applying the categorical approach in the instant case, we find that a felony conviction under section 49.04 of the Texas Penal Code Annotated is a conviction for a crime of violence as defined under 18 U.S.C. § 16(b).[2]

We must determine whether "operating a motor vehicle while intoxicated" as defined by Texas case law is a crime of violence under 18 U.S.C. § 16(b) when the respondent has been convicted of a felony. The test is

---

[2]We note that the term "crime of violence" has also been defined by the United States Sentencing Guidelines at U.S.S.G. §§ 4B1.2(1)(i) and (ii). *See* 18 U.S.C.A. ch. 4, §§ 4B1.2(1)(i), (ii) (West 1996). In *United States v. Rutherford,* 54 F.3d 370, 373 (7th Cir.), *cert. denied*, 516 U.S. 924 (1995), the court concluded that the offense of causing serious bodily injury when driving while intoxicated does not have as an element the "use, attempted use, or threatened use of physical force." When making this statement, the court in *Rutherford* was interpreting U.S.S.G. § 4B1.2(1)(i). The sentencing guidelines at § 4B1.2(1)(i) are very similar to the definition of a crime of violence under 18 U.S.C. § 16(a). The parties have agreed that the Texas DWI statute does not fit the definition of a crime of violence under 18 U.S.C. § 16(a). In *Rutherford*, the court further analyzed the case under U.S.S.G. § 4B1.2(1)(ii), which requires "conduct that presents a serious potential risk of physical injury," and consequently differs from 18 U.S.C. § 16(b), which requires that a "substantial risk that physical force . . . be used in the course of committing the offense." The court did not analyze the case under the standard defined in 18 U.S.C. § 16(b).

whether the offense, by its nature, involves a substantial risk that physical force may be used.

The respondent does not contest that he was convicted under Texas law of being intoxicated while operating a motor vehicle in a public place. He also does not contest that he was sentenced under the enhancement paragraph of section 49.09(b) of the Texas Penal Code Annotated and therefore was convicted of a felony. The question presented by the respondent is whether merely *operating* a vehicle while intoxicated (which need not entail driving it) creates a substantial risk of physical force under Texas law. The respondent's focus is on the words "substantial risk" rather than on reading those words in conjunction with the *nature of the action* and whether it *may result* in the use of *physical force*.

We conclude that, under Texas law, the nature of the crime of operating a motor vehicle while intoxicated may create a substantial risk that physical force will be applied. The plain meaning of the word "operate" connotes an effort, or the doing of something by the operator. Texas case law defines the action of operating a motor vehicle while intoxicated as the exertion of personal effort to cause the vehicle to function, i.e., the defendant must take action to affect functioning of a vehicle in a manner that enables the vehicle's use. *See Denton v. State, supra; Barton v. State*, 882 S.W.2d 456 (Tex. App. 1994). This general definition under Texas law regarding driving while intoxicated appears to conform to the analysis set forth in *Matter of Alcantar, supra*, wherein we cited case law that interprets the term "substantial risk."

We do not agree with the respondent's argument that, for purposes of 18 U.S.C. § 16(b), it must be established that the force that "may be used in the course of committing the offense" must be accompanied by a specific intent to use such force.[3] We have previously held that § 16(b) is not limited to crimes of specific intent, but includes at a minimum reckless behavior. *See Matter of Alcantar, supra*, at 813. Furthermore, we held in *Matter of Magallanes, supra*, that drunk driving is an inherently reckless act.

The respondent's argument fails to acknowledge the significant contextual distinction between the term "use" in § 16(a) and the phrase "may be used" in § 16(b). The focus in § 16(a) is on the *statutory elements* of the offense, whereas the focus in § 16(b) is on the *nature* of the crime. The imposition of a specific intent requirement is not a reasonable inference in the context of § 16(b). We conclude that 18 U.S.C. § 16(b) does not require intentional conduct, i.e., the specific intent to use force.

---

[3]We note that the United States Court of Appeals for the Third Circuit, in *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992), suggested in dicta that drunk driving may not be a crime of violence because any "use of force" resulting therefrom would not be intentional. We are not persuaded by the court's analysis in *Parson*.

We find that, by its nature, operating a motor vehicle in a public place while under the influence involves a substantial risk that physical force against the person or property of another may be used in the commission of the offense and that such a crime, when a felony under Texas law, constitutes an aggravated felony.

## C. Application of Prior Precedent

The respondent argues that in *Matter of Magallanes, supra*, we used the wrong definition of a "crime of violence." He argues that in *Magallanes* the Board analyzed the offense in terms of risk of physical injury to another, rather than risk of use of force.

The respondent contends that although driving while intoxicated presents a "serious potential risk of physical injury to another," this is not the appropriate standard under the Act. Rather, the question is whether DWI involves a substantial risk that physical force may be used, as stated in 18 U.S.C. § 16(b).

In *Matter of Magallanes*, we held that the potential for harm is determinative in finding a criminal offense a crime of violence under 18 U.S.C. § 16(b). At first blush, the difference in phrasing appears trivial because most physical injury or harm results from the use of physical force. However, "the use of physical force" is an act *committed* by a criminal defendant, whereas the "risk of physical injury" is a *consequence* of a criminal defendant's actions.

Importantly, neither the reasoning nor the conclusion of *Matter of Magallanes* has been altered by our holding in this case. We do, however, clarify our previous decision. *See Matter of Sweetser*, 22 I&N Dec. 3390 (BIA 1999). Criminal offenses that carry a substantial risk that force will be used also share the potential to result in harm. *See United States v. Gonzalez-Lopez,* 911 F.2d 542, 547 (11th Cir. 1990), *cert. denied*, 500 U.S. 933 (1991); *Matter of Magallanes, supra*. Nevertheless, we recognize that criminal offenses that have the potential for harm do not always carry a substantial risk that force will be used in their commission. Absent a causal link between the harm and the force, a criminal offense cannot be identified as a crime of violence under 18 U.S.C. § 16(b).

Our decision in *Matter of Magallanes* established that driving under the influence involves a substantial risk that a driver will injure someone in an accident. The risk of injury is directly related to a substantial risk that the driver, while operating his motor vehicle, will use physical force to cause the injury. As in the present case, the focus in *Magallanes* was on the conduct required for a conviction rather than on the consequences of the respondent's crime. *See Matter of Magallanes, supra* (applying the 18 U.S.C. § 16(b) test to the *conduct* required for a conviction under sections 28-692(a)(1) or 28-697(a)(1) of the Arizona Revised Statutes Annotated).

Therefore, despite the "risk of harm" language, *Matter of Magallanes* turned upon the substantial risk of "physical force" being used against people or property. *See Matter of Sweetser, supra.*

We find that the reasoning in *Matter of Magallanes* applies also to a Texas DWI felony conviction. The conduct required for a felony conviction under the Texas statute meets the definition of a crime of violence. We find further that the generic elements of the offense are such that its commission would ordinarily present a risk that physical force will be used against the person or property of another.

### D. Deadly Weapon Finding Under Texas Law

The respondent argues that without the additional factor of a deadly weapon finding, or some other facial indication that a violent crime was committed, a court cannot conclude that a simple DWI conviction is a crime of violence. The respondent further argues that, under Texas law, there is a different, additional provision required to make DWI an aggravated offense—namely, a deadly weapon finding on a DWI conviction, where the potential for violence must be proved. *See* Tex. Penal Code Ann. § 1.07(17). The respondent asserts that a vehicle is not per se a deadly weapon under Texas law unless it is intentionally used as a deadly weapon.

We agree with the Service's position that neither section 101(a)(43)(F) of the Act nor 18 U.S.C. § 16(b) requires a deadly weapon finding. The term "aggravated" in relation to crimes in Texas covers offenses in which parole eligibility is affected. When operating a vehicle is an element of the offense, the act of simply operating the vehicle cannot also be used to support an affirmative deadly weapon finding. To "use" an "instrumentality"—be it a gun, a board, or an automobile—to support an affirmative deadly weapon finding, there must be some collateral use of the "instrumentality" that facilitates an associated crime. A DWI offense under section 49.04 of the Texas Penal Code Annotated is enhanced to a third degree felony conviction only if the evidence establishes the elements necessary under section 49.09(b) of the Texas Penal Code Annotated. A deadly weapon finding is not required.

### VII. CONCLUSION

Upon consideration, we find no error in the Immigration Judge's determination that a crime of DWI under section 49.04 of the Texas Penal Code Annotated, which is a felony because the punishment has been enhanced under section 49.09(b), is an aggravated felony, i.e., a crime of violence within the meaning of section 101(a)(43)(F) of the Act. We find that the respondent was properly ordered removed from the United States as

charged. Furthermore, the record contains no evidence that the respondent has asserted eligibility for relief from removability, and no application for relief has been made. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

Board Member Neil P. Miller did not participate in the decision in this case.

*CONCURRING OPINION:* Edward R. Grant, Board Member, in which Lauri S. Filppu, Board Member, joined

I respectfully concur.

The Board has been asked in this matter to reconsider and overrule our precedent decision in *Matter of Magallanes*, 22 I&N Dec. 1 (BIA 1998). The decision of the majority ably clarifies *Magallanes* in light of our intervening decision in *Matter of Sweetser*, 22 I&N Dec. 3390 (BIA 1999), which held that for purposes of determining that an offense is a "crime of violence" under 18 U.S.C. § 16(b) (1994), it is insufficient to demonstrate that the offense poses a substantial risk of physical injury (in that case, the drowning death of a child). Rather, the "substantial risk" must be that force will be employed in causing any such injury. *Matter of Sweetser, supra.* The majority concludes, affirming but clarifying *Magallanes*, that the "substantial risk" present in the case of a felony driving while intoxicated ("DWI") offense in Texas is not merely the *consequence* that physical injury may result, but the risk that a specific *act*, i.e., the use of force, will occur.

While I agree with this conclusion and join the majority's decision, I write separately to address at greater length an issue addressed in brief by the majority: whether, for purposes of 18 U.S.C. § 16(b), the "use of force" that may result in the course of committing the underlying[1] offense must itself be the result of a specific intent to use such force.

It is important to address this issue for three reasons. First, the parties and amici have addressed it at length, and it is the cornerstone of arguments in this and numerous other cases before the Board urging us to reconsider *Magallanes*. Second, the arguments on behalf of the respondent urge the Board to reconsider not only *Magallanes* but also *Matter of Alcantar*, 20 I&N Dec. 801 (BIA 1994), in which we held that 18 U.S.C. § 16(b) is not limited to crimes of specific intent. *Id.* at 809. The seminal nature of our decision in *Alcantar* suggests that we should state why we do not find alternative readings of § 16(b) to be persuasive. Finally, two federal circuit courts of appeals have suggested that drunk driving may not be a crime of

---

[1]I also note that under the Texas statutes at issue a DWI offense is a felony (and thus classifiable under 18 U.S.C. § 16(b)) only if the defendant has twice previously been convicted of a similar offense.

violence because any "use of force" resulting therefrom would not be accompanied by specific intent. *See United States v. Rutherford*, 54 F.3d 370, 377 (7th Cir.), *cert. denied*, 516 U.S. 924 (1995); *United States v. Parson*, 955 F.2d 858, 866 (3d Cir. 1992). Although this case addresses only the Texas DWI statute, our analysis of § 16(b) will have precedential effect nationwide, including within the jurisdictions of the United States Courts of Appeals for the Third and Seventh Circuits. Under these circumstances, we should clearly state why § 16(b) does *not* require the Government to establish that the "physical force . . . [that] may be used in the course of committing the offense" is accompanied by a specific intent to use such force. 18 U.S.C. § 16(b).

The respondent's argument hinges on the word "used" in § 16(b), stating that it must be construed to require a specific intent to use force. According to the respondent, in holding that a crime of recklessness could be a crime of violence, *Magallanes* implicitly determined that the term "used" did not require intentional conduct, that is, the specific intent to use force. The respondent argues that in so finding, the Board failed to apply the plain meaning to this term. This argument, however, takes the word "used" out of context, fails to give full meaning to the entirety of § 16(b), and ignores the contrast between this provision and the alternative definition of "crime of violence" in 18 U.S.C. § 16(a).

The core concept of § 16(b) is of an offense that, "by its *very nature*," poses a substantial risk that physical force will be used. Thus, it is the "nature" or "character" of the offense that determines whether it is a crime of violence, and not the mens rea of the offender. Both this Board and the courts have employed a generic or "categorical" approach in determining whether an offense is a crime of violence under § 16(b). *See United States v. Velazquez-Overa*, 100 F.3d 418 (5th Cir. 1996), *cert. denied*, 529 U.S. 1133 (1997); *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987); *Matter of Magallanes, supra; Matter of Alcantar, supra*. Imposing a requirement that the risk of use of force must be a risk that is accompanied by "specific intent" shifts the focus away from the generic nature or character of the offense, and would require speculation into whether any particular use of force that is "risked" in committing the offense is the type of force that would require specific intent.

The respondent's reliance on *United States v. Rutherford, supra*, is misplaced. Although it is true that the Seventh Circuit found that the phrase "use of force" implied specific intent, the court was construing this phrase in the context of a provision virtually identical to 18 U.S.C. § *16(a)*, not § 16(b). *United States v. Rutherford, supra*, at 373 (interpreting U.S.S.G. § 4B1.2(1)(i)). The respondent's argument fails to acknowledge the significant contextual distinction between the phrase "use of force" in § 16(a), and the phrase "force . . . may be used" in § 16(b). Under § 16(a), as under clause (i) of U.S.S.G. § 4B1.2(1), the offense must have, *as an element*, the

use, attempted use, or threatened use of physical force. Thus, the focus in § 16(a) is on the statutory elements of the offense and whether those elements specifically include the use (or attempt or threat) of force. In the context of § 16(a), a requirement of specific intent to use force is a reasonable implication because force must be an element of the crime, not merely something that is a possible consequence or risk. The context of § 16(b), which focuses on the nature of the crime, not its elements, is quite different. The imposition of a specific intent requirement is not a reasonable inference from this provision, but rather, a redrafting of it.

The Third Circuit's dicta in *United States v. Parson, supra*[2], goes further than any other authority in finding a "specific intent" requirement in the language of § 16(b). "[A] defendant's commission of a crime that, by its nature, is likely to require force similarly suggests *a willingness to risk having to commit a crime of specific intent. United States v. Parson, supra,* at 866 (emphasis added). The problem with this analysis is that the "risk" described in § 16(b) is not that a separate, specific intent crime will be committed, but merely that force "will be used." Indeed, the concept of "risk" seems quite divorced from that of "specific intent." Inquiry into whether one's actions create a risk that one will use force is concrete and specific; assessing whether one's actions may create a risk that one will form a specific intent to use force is vague and speculative. There should be no requirement of such an assessment in the absence of statutory language incorporating specific intent as an element of culpability.

It is clear from the jurisprudence that interprets § 16(b) that the risk of the use of force is determined, not from the potential mens rea of the offender, but from the nature of the conduct he has set in motion. *United States v. Velazquez-Overa, supra*, at 420-21 (holding that indecency with a child involving sexual contact is a crime of violence under § 16(b) and stating, "[E]ither a crime is violent 'by its nature' or it is not. It cannot be a crime of violence 'by its nature' in some cases, but not others, depending on the circumstances."); *United States v. Rodriguez-Guzman*, 56 F.3d 18, 21 (5th Cir. 1995) (involving burglary of a vehicle or commercial property); *United States v. Gonzalez-Lopez,* 911 F.2d 542, 549 (11th Cir. 1990) (involving burglary of a dwelling and stating, "[T]he reasoning [is] clear: whenever an

---

[2]The Third Circuit's discussion of § 16(b) is dicta because the issue in *Parson*, as it was in *Rutherford*, was how to interpret the second prong (clause (ii)) of the definition of a "crime of violence" in the sentencing guidelines in U.S.S.G. § 4B1.2(1)(ii). *See* 18 U.S.C.A. ch. 4, § 4B1.2(1)(ii) (West 1996). In contrast to § 16(b), clause (ii) of the sentencing guidelines definition does not require a substantial risk that force may be used, but rather, refers to conduct "that presents a serious potential risk of *physical injury* to another." U.S.S.G. § 4B1.2(1)(ii) (emphasis added). As we held in *Matter of Sweetser, supra*, risk of physical injury alone is insufficient to classify an offense as a crime of violence under § 16(b).

intruder enters a dwelling, a person may be present inside, in which case the alarm to both the intruder and the resident may result in the use of physical force."), *cert. denied*, 500 U.S. 933 (1991); *see also United States v. Springfield, supra*, at 863 n.1 (finding involuntary manslaughter a crime of violence under 18 U.S.C. § 924(c)(3) and stating, "Congress did not intend to limit 'crimes of violence' to crimes of specific intent: 'Since no culpability level is prescribed in this section, the applicable state of mind that must be shown is, at a minimum, "reckless," i.e., that the defendant was conscious of but disregarded the substantial risk that the circumstances existed.'").

The respondent's arguments, therefore, run counter to the weight of judicial authority interpreting § 16(b) and comparable provisions. There is no warrant for us to reconsider the underlying premise of *Matter of Alcantar, supra*, that specific intent is not an element that must be proved to find that an offense is a crime of violence under 18 U.S.C. § 16(b).

*DISSENTING OPINION:* Lory Diana Rosenberg, Board Member

I respectfully dissent.

Drunk driving is a highly charged issue in our country today and, accordingly, triggers very significant practical and emotional concerns. Certainly, no one is in favor of it. However, that is not the issue before us. Before us is the question whether drunk driving is something more than a serious societal problem that is the legitimate subject of strict civil and criminal enforcement in every state in the union. That question is: Does a felony conviction for drunk driving amount to a "crime of violence," which is an aggravated felony conviction that subjects the offender, who might be a long time lawful resident but not a citizen of the United States, to removal from this country?

To answer this question, we must look to the statute that classifies a "crime of violence" among a listing of offenses that are defined as constituting aggravated felony convictions. *See* section 101(a)(43) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43) (1994 & Supp. II 1996). In that section of the statute, Congress expressly defined a "crime of violence" according to its definition in another federal statute, 18 U.S.C. § 16 (1994). *See* section 101(a)(43)(F) of the Act. This provision does not cover every conviction for an offense that might form a basis for removal of a noncitizen; nor does it include every conviction for an offense that is classified as an aggravated felony. While there may be some overlap with other offenses included in the aggravated felony definition, an appropriate construction of the phrase "crime of violence" under section 101(a)(43)(F) of the Act must be limited to the terms of 18 U.S.C. § 16.

When we first examined this question in *Matter of Magallanes*, 22 I&N

Dec. 1 (BIA 1998), I acceded to what I now recognize as a misinterpretation of the law, joining both the reasoning and the result in that decision. In further analyzing sections (a) and (b) of 18 U.S.C. § 16, I conclude that the offense of drunk driving, or "driving under the influence," is not necessarily a crime of violence.

In my view, the majority has failed to follow an appropriately conservative approach in assessing whether a felony conviction for driving under the influence is properly designated a crime of violence, but has embraced an interpretation of the definition that is overbroad in relation to the plain statutory language referenced in section 101(a)(43)(F) of the Act. What is more, the majority decision appears to ignore or miss the point of our holding in *Matter of Sweetser*, 22 I&N Dec. 3390 (BIA 1999), that a conviction under a divisible state statute may not constitute a crime of violence as defined under 18 U.S.C. § 16(b). Consequently, for the reasons discussed below, I dissent.

## I. FEDERAL STATUTORY LANGUAGE

In enacting a federal statute that authorizes the removal of certain noncitizens who have been convicted of specific crimes in the United States, Congress designated the particular types of offenses that result in inadmissibility or deportability and subject the offender to removal. *See, e.g.*, sections 212(a) of the Act, 8 U.S.C. § 1182(a) (1994 & Supp. II 1996); section 237(a) of the Act, 8 U.S.C. § 1227(a) (Supp. II 1996). We are bound to rely on the plain language of each subsection of the immigration statute to afford it the specific meaning that Congress intended. *See K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (requiring an examination of "the particular statutory language at issue, as well as the language and design of the statute as a whole"); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984). In addition, "Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear, . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371 (1988).

The phrase "crime of violence" was first introduced as a term of art by the Comprehensive Crime Control Act of 1984,[1] which included the

---

[1]Pub. L. No. 98-473, 98 Stat. 1976 (1984).

Sentencing Reform Act of 1984[2] and created the United States Sentencing Commission. *See* 28 U.S.C. §§ 991-998 (1994 & Supp. II 1996); *Mistretta v. United States*, 488 U.S. 361, 368 (1989); *see also Taylor v. United States,* 495 U.S. 575, 581-83, 587 (1990) (discussing the evolution of the term "violent felony" under the Armed Career Criminal Act); *United States v. Parson,* 955 F.2d 858, 863-65 (3d Cir. 1992) (analyzing the evolution of the standard in relation to the 1989 amendments to the United States Sentencing Guidelines). At that time, Congress defined the term "crime of violence" in a separate section of the Comprehensive Crime Control Act of 1984,[3] codifying it as 18 U.S.C. § 16.

Our determination whether the respondent's conviction constitutes a crime of violence depends on whether the statute under which the conviction occurred necessarily involves conduct covered by either 18 U.S.C. § 16(a) or § 16(b). For a particular offense to constitute a "crime of violence" under 18 U.S.C. § 16(a), the actual use, attempted use or threatened use of physical force must be a necessary element of the crime as defined by the statute under which the conviction was obtained.[4] *Matter of Alcantar*, 20 I&N Dec. 801 (BIA 1994). In addition, § 16(a) requires that the force involved is force that is exerted against the person or property of another.

For a particular offense to constitute a "crime of violence" under 18 U.S.C. § 16(b), the offense must be a felony and the crime—as evidenced by the generic elements of the offense as defined in the criminal statute— must "by its nature" involve a "substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.; see also Matter of Alcantar, supra,* at 812. In determining the nature of the crime, it is not the potential consequence of the offense that is relevant, but the existence of a substantial risk that the perpetrator might resort to the use of physical force to accomplish the crime.[5] *Matter of Sweetser, supra.* If the nature of the crime is such that there is a substantial risk that force may be used in the course of committing the offense, such force must be directed at either the person or property of another person.

The majority concedes that the respondent's conviction does not come within the terms of subsection (a) of 18 U.S.C. § 16, but concludes that the

---

[2]Title II, ch. 2, § 217(a), 98 Stat. at 2017.

[3]Title II, ch. 10, § 1001(a), 98 Stat. at 2136.

[4]An element of a criminal offense, also referred to as an essential element, is one that is a "constituent part[ ] of a crime which must be proved by the prosecution to sustain a conviction." *Black's Law Dictionary* 520 (6th ed. 1990); *see also United States v. Sherbondy*, 865 F.2d 996, 1006 (9th Cir. 1988).

[5]Although in *Matter of Alcantar, supra*, the Board referred to certain sentencing guidelines cases that required a finding of a "serious risk of injury" rather than a finding that there was a "substantial risk that physical force would be used in the course of the commission of the crime," the blurring of this distinction is inappropriate. *See Matter of Sweetser, supra.*

respondent's conviction satisfies the terms of subsection (b). I disagree and suggest that an examination of the actual statutory language does not support the majority's conclusions.

## A. Terms of 18 U.S.C. § 16(b): "Substantial Risk . . . [of] *Physical Force," Not Injury*

The language used in the first subsections of both 18 U.S.C. § 16(a) and the current version of section 4B1.2(a)(1) of the United States Sentencing Guidelines ("U.S.S.G."), applicable to career offenders, is virtually identical to the extent that it limits a "crime of violence" to an offense in which the crime "has as an element the use . . . of physical force." *See* 18 U.S.C.A. ch. 4, § 4B1.2(a)(1) (West 1996). By contrast, subsection (b) of 18 U.S.C. § 16 requires a showing that there is a "substantial risk that physical force . . . may be used in the course of committing the offense," whereas the current version of subsection (2) of U.S.S.G. § 4B1.2(a) refers to an offense which "is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." *See* U.S.S.G. § 4B1.2(a)(2) (emphasis added).[6] Accordingly, under the definition that we are bound to apply to the respondent's conviction, it is the substantial risk that physical force may be used, and not the risk of serious physical injury, that is the controlling factor in determining whether an offense is a crime of violence. *See Matter of Sweetser, supra; see also Matter of Alcantar, supra*, at 806 n.3 (cautioning that any permissible analogy between § 16 and the current definitions of a "crime of violence" at § 4B1.2(1) of the U.S.S.G., or of "violent felony" at 18 U.S.C. § 924(e)(2)(B), must be careful to reflect these differences).

Nevertheless, in *Matter of Magallanes, supra*, the Board held that a respondent, who was convicted under the Arizona statute of aggravated driving while under the influence and sentenced to more than 1 year in prison, was convicted of a crime of violence within the meaning of section 101(a)(43)(F) of the Act. Our opinion in that case reveals that we overemphasized the character of the offense in relation to the possibility that injury might occur. Essentially, we overlooked the statutory requirement that the nature of the crime be one in which there was a substantial risk that physical force may be used in the course of committing the offense. *See Matter of Sweetser, supra*. Thus, although we properly recited the statutory definition of a "crime of violence" and conceded that the use of physical force against the person or property of another was *not* an essential element of the

---

[6]Effective November 1997, without any change to the terminology articulated in 1989, the subsections of U.S.S.G. § 4B1.2 that previously had been designated as (1)(i) and (ii) were redesignated and codified as (a)(1) and (2), respectively.

offense of driving under the influence, we concluded that the respondent was convicted of a crime of violence because the offense of which he was convicted "is *the type of crime that involves a substantial risk of harm* to persons and property." *Matter of Magallanes, supra*, at 6 (emphasis added).

Plainly, according to the applicable statutory language, the substantial risk involved if an offense is to be classified under § 16(b) is not the risk of serious harm to persons and property. This is not the standard imposed by 18 U.S.C. § 16(b); the standard is the substantial risk that *physical force* may be used in the course of committing the offense. Consequently, no matter how long and hard the majority attempts to rationalize what we really meant in *Magallanes*, or to contend that injury usually flows from the use of force, our opinion in *Magallanes* was simply wrong. *Cf. Matter of Sweetser, supra*, at 8-9; *see also Matter of Puente*, 22 I&N Dec. 3412, at 11 (BIA 1999).

### B. Terms of 18 U.S.C. § 16(b): "Substantial Risk . . . [of] *Physical Force*"

In legal usage, "violence" is defined as

[u]njust or unwarranted exercise of force, usually with the accompaniment of vehemence, outrage or fury . . . . Physical force unlawfully exercised; abuse of force; that force which is employed against common right, against the laws, and against public liberty . . . . The exertion of any physical force so as to injure, damage or abuse.

*Black's Law Dictionary* 1570-71 (6th ed. 1990). "Force" is defined as "[p]ower, violence, compulsion, or constraint exerted upon or against a person or thing. . . . [S]trength directed to an end. Commonly the word occurs in such connections as to show that unlawful or wrongful action is meant." *Id.* at 644. "Physical force" is "[f]orce applied to the body; actual violence." *Id.* at 1147.

The United States Court of Appeals for the Fifth Circuit has rejected the suggestion that the term "force," as used in 18 U.S.C. § 16(b), means simple movement and has construed the term as limited to violent or destructive force. *United States v. Rodriguez-Guzman*, 56 F.3d 18, 20 n.8 (5th Cir. 1995). An offender who sits in an automobile in a public place, or turns on the heater or auxiliary functions, or allows his or her car to be used by another who is under the influence can be convicted in Texas for driving under the influence. *See, e.g., Reddie v. State*, 736 S.W.2d 923, 926 (Tex. App. 1987) (requiring only that the accused "perform a function, or operation, or produce an effect"); *Venable v. State,* 397 S.W.2d 231 (Tex. Crim. App. 1965) (upholding conviction where evidence established that the defendant allowed his car to be driven by a person whom he knew to be intoxicated).

These types of activities—sitting in one's car, using auxiliary functions,

or lending one's car to another—cannot be said to involve a substantial risk that the offender will resort to violent or destructive physical force in the course of committing the crime. *United States v. Rodriguez-Guzman, supra,* at 20 (requiring a "strong probability" that such force may be used by the offender). Yet, such conduct indisputably may support a conviction under Texas law on the basis that such conduct constitutes "operating" a vehicle while under the influence. Remarkably, according to the majority opinion, a Texas conviction based on merely operating, but not driving, a vehicle while intoxicated is sufficient to constitute a crime of violence under section 101(a)(43)(F) of the Act.

### C. Terms of 18 U.S.C. § 16(b): "Substantial Risk . . . Physical *Force May Be Used"*

In construing the term "use" in the context of the "use, attempted use, or threatened use of physical force" language in 18 U.S.C. § 16(a), the Seventh Circuit has defined "use" as "'[t]he act of employing a thing for any (esp. a profitable) purpose.' The Oxford English Dictionary, 2d ed. vol. XIX at 350 (Clarendon Press 1989)." *United States v. Rutherford*, 54 F.3d 370, 372 (7th Cir.), *cert. denied*, 516 U.S. 924 (1995). The Seventh Circuit found that "[i]n ordinary English, the word 'use' implies intentional availment." *Id.* at 372-73 (citing *Webster's Ninth New Collegiate Dictionary*).

Similarly, the Supreme Court has held that the term "use" must connote more than mere possession of a firearm by a person who commits a drug offense. *Bailey v. United States*, 516 U.S. 137 (1995). Recognizing that the term "use" was capable of a broad interpretation covering treatment of a firearm as an item of value as well as in its more traditional posture as a weapon, the Court concluded that to establish "use" for the purposes of 18 U.S.C. § 924(c)(1) the language, context, and history of the statute indicate that the Government must show *active employment* of the firearm. *Bailey v. United States, supra,* at 158. Likewise, in *Smith v. United States*, 508 U.S. 223 (1993), the Court recognized that

> Webster's defines "to use" as "[t]o convert to one's service" or "to employ." Webster's New International Dictionary 2806 (2d ed. 1950) Black's Law Dictionary contains a similar definition: "[t]o make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or action by means of." Black's Law Dictionary 1541 (6th ed. 1990).

*Id.* at 228-29 (citing *Astor v. Merritt*, 111 U.S. 202, 213 (1884)); *see also Brandenburg v. Ohio*, 395 U.S. 444, 447, 448-49 (1969) (construing the phrase "use of force" to address action taken by some person or persons to accomplish a particular end in relation to the constitutional guarantees of free speech and free press).

In the context of 18 U.S.C. § 16(b), the term "use" refers to the conduct

1023

of the offender and connotes the likelihood of specific action on the offender's part—the potential that "physical force . . . may be used in the course of committing the offense." The "offense" is the crime the offender has set out to commit and it is he or she who may have to use physical force to commit it, even though physical force is not a necessary element of the offense. Thus, the substantial risk sanctioned by the statutory section is the risk that the offender may resort to force. For example, in discussing the risk of violence associated with burglary, the Supreme Court stated plainly in *Taylor v. United States, supra*:

> The fact that an offender enters a building to commit a crime often creates the possibility of a violent confrontation between the offender and an occupant . . . . And the *offender's own awareness of this possibility* may mean that he is prepared to use violence if necessary to carry out his plans or to escape.

*Id.* at 588 (emphasis added).

Consequently, "[u]se of physical force is an intentional act, and therefore . . . requires specific intent to use force." *United States v. Parson, supra,* at 866 (comparing criminals whose acts involve the use of force with "criminals whose actions merely risk causing physical injury . . . [under] a lower mens rea of 'pure' recklessness"). "[A] drunk driving accident is not the result of plan, direction, or purpose but of recklessness at worst and misfortune at best." *United States v. Rutherford, supra*, at 372. In *Parson*, the Third Circuit emphasized, "Certainly, [18 U.S.C. § 16] *excluded reckless driving,* child endangerment, and like crimes." *United States v. Parson, supra*, at 874 (emphasis added). Therefore, to find the respondent liable under 18 U.S.C. § 16(b), we must point to the offender's active availment of a course of action undertaken with the awareness that his conduct may result in the need to use force to carry out his criminal objective. *See Bailey v. United States, supra*, at 144 (requiring "action and implementation").[7]

Notwithstanding the suggestion of the concurring Board member to the contrary, the analysis in the *Rutherford* and *Parson* decisions, above, not only is reasonable but appears to be consistent with the Fifth Circuit's interpretation of circumstances similar to those presently before us. That is, the "use" of force must be intentional, i.e., it must be engaged in with the intent to accomplish the underlying criminal objective. *See United States v.*

---

[7]The opinion of the concurring Board Member, citing *Matter of Alcantar, supra*, and *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987), overlooks the fact that these cases appear to have relied, erroneously, on supposed legislative history to substantiate their holdings. In fact, the paragraph that was quoted in *Springfield*, which was adopted in *Matter of Alcantar, supra*, seems to have been taken out of context, and to refer only to a firearms offense, not to the state of mind required to establish a crime of violence. *See* S. Rep. No. 97-307, at 890-91 (1982) (discussing section 1823 of the proposed bill, S. 1630).

*Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996) (finding "a significant likelihood that physical force may be used to perpetrate the crime"), *cert. denied*, 520 U.S. 1133 (1997). Moreover, the force itself must be more than mere movement; it must involve the use of force in order to accomplish an objective, such as carrying out the principal offense. *United States v. Rodriguez-Guzman, supra*, at 21 n.8 (emphasizing that "[t]he clear import of defining a 'crime of violence' is that 'force' . . . is synonymous with destructive or violent force").

Accordingly, I believe it must be conceded that the phrase in § 16(b), "physical force . . . *may be used*" means the probability of a deliberate action being taken by the offender, and does not refer to an unexplained, accidental, spontaneous or serendipitous occurrence of force. In the context of § 16(b), "use" of force means a destructive or violent action taken by a perpetrator who is violating the law.

### D. Terms of 18 U.S.C. § 16(b): "Substantial Risk . . . *in the Course of Committing the Offense*"

The risk that physical force may be used must not only be substantial, it must be probable that such force would be used in the course of committing the offense. These limitations have been addressed by the courts in related contexts. In addressing a "violent felony" under the Armed Career Criminal Act of 1984, Pub. L. No. 98-473, 98 Stat. 2185, the Supreme Court recognized the necessary relationship between the nature of the underlying offense and the perpetrator's commission of a second crime to carry out the first. *Taylor v. United States, supra*. The Supreme Court concluded that

> the most likely explanation . . . is that Congress thought that . . . burglary, arson, extortion, and the use of explosives—so often presented a risk of injury to persons, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, *they do not necessarily involve the use or threat of force* against a person.

*Id.* at 597 (emphasis added). Thus, the Court emphasized that the nature of the underlying offense was the predicate for the risk that violence would occur.

Contrary to the assertion of the concurring Board Member in discussing *United States v. Rutherford, supra*, this interpretation of "force may be used" is not limited to the use of attempted, actual, or threatened physical force when it is an element of the offense. The coupling of the phrase "substantial risk" with the phrase "may be used" in § 16(b) does not change the definition of "use"; it merely modifies the chance or likelihood of the "use" occurring in the course of the crime being committed.

Although the concurring Board Member characterizes the Third Circuit's opinion in *United States v. Parson* as "go[ing] further than any

other authority" in finding a specific intent requirement in relation to the need to use force to accomplish the crime, I beg to differ. The Supreme Court's opinion in *Taylor v. United States* quite clearly contemplated an offender's awareness of the character of his offense and the need to "use violence if necessary to carry out his plans or to escape." *Taylor v. United States, supra*, at 588.

Interestingly, it is *United States v. Springfield*, 829 F.2d 860 (9th Cir. 1987), cited by the concurring Board Member to support a contrary proposition, which makes crystal clear that we are not simply concerned with *any* consequences that could result from the offender's crime, but with a potential action by the offender undertaken to carry out the offense. As explained by the court, "The wording of section 924(c)(3)(B) covers crimes such as robbery that do not have as an element the use of physical force but 'by their nature' create a situation in which it is likely that the criminal *may resort to physical force to accomplish the criminal end*." *Id.* at 863 (emphasis added).[8]

I have difficulty seeing how, if "operating a vehicle" in Texas encompasses any action taken that involves its functioning, there remains a substantial risk that the respondent will engage in drunk driving or some other use of physical force simply because he is operating the vehicle. *See Matter of Palacios,* 22 I&N Dec. 3373 (BIA 1998) (Rosenberg, dissenting). The offense of driving under the influence is accomplished when the respondent, whether in his driveway or by the side of the road, changes the tire, turns on the heater, or even lends the car to a friend. What conduct on the part of the offender in the course of these functions involves a substantial risk that he will engage in the use of physical force?

As discussed below, the breadth of activity that supports a conviction under Texas law simply does not necessarily include the "substantial risk that physical force may be used" in connection wih the conduct that supports a conviction for drunk driving. Similarly, in *United States v. Doe*, 960 F.2d 221, 225 (1st Cir. 1992), the First Circuit reasoned that a broader reading of the statute "would also bring within the statute's scope a host of other crimes that do not seem to belong there . . . [because] one would have to focus upon the risk of direct *future* harm that present conduct poses." The court concluded, "Rather, we must read the definition in light of the term to be defined, 'violent felony,' which calls to mind a tradition of crimes that involve the possibility of more closely related, active violence." *Id.* at 225.

Consequently, in my view, the edict of the Supreme Court in *Fong Haw Tan v. Phelan*, 333 U.S. 6 (1948), is no less applicable and no less binding

---

[8]In fact, the sentence quoted in *Springfield*, read in its entirety, sets forth a state of mind requirement unrelated to a crime of violence. *See supra* note 7.

today than it was when first pronounced 50 years ago:

> We resolve the doubts in favor of that [more narrow] construction because deportation is a drastic measure and at times the equivalent of banishment or exile. *Delgadillo v. Carmichael*, 332 U.S. 388, 68 S.Ct. 10. It is the forfeiture for misconduct of a residence in this country. Such a forfeiture is a penalty. To construe this statutory provision less generously to the alien might find support in logic. But since the stakes are considerable for the individual, *we will not assume that Congress meant to trench on his freedom beyond that which is required by the narrowest of several possible meanings of the words used.*

*Id.* at 10 (emphasis added).


## II. INTERPRETATION OF AMBIGUOUS OR DIVISIBLE STATUTES

I have not unintentionally left the descriptive phrase "by its nature" to the end of the analysis. As used in describing an offense classifiable under § 16(b), the phrase refers to the type of offense of which the respondent has been convicted. In assessing whether a particular conviction is for a crime of violence, we consider only the inherent nature of the offense described in the criminal statute under which the respondent was convicted in relation to the applicable statutory terms in § 16(b). *See Matter of Alcantar, supra*, at 812 (citing *Taylor v. United States, supra*, at 602, and following a "categorical approach" that limits the trial court to review only the fact of the conviction and the statutory definition of the prior offense); *see also United States v. Velazquez-Overa, supra*, at 420 (holding that "the phrase 'by its nature' compels a categorical approach to determining whether an offense is a crime of violence under Section 16(b)" and repudiating "an earlier suggestion that sentencing courts may sometimes need to examine the underlying facts of defendants' prior convictions"). As stated in *Velasquez-Overa*, "The reason is clear: either a crime is violent 'by its nature' or it is not. It cannot be a crime of violence 'by its nature' in some cases, but not others, depending on the circumstances." *Id.* at 420-21; *accord Matter of Sweetser, supra; see also United States v. Guadardo*, 40 F.3d 102 (5th Cir. 1994); *Matter of Alcantar, supra.*

The majority contends, erroneously, that this means that we do not consider the elements of the offense. *See Matter of Puente, supra*, at 10; *cf. Matter of Sweetser, supra*. However, in determining the nature of the offense for purposes of § 16(b), we *do* assess the elements of the offense as defined by the statute under which the respondent was convicted. *Id.* The assessment of the "crime as defined" neither encompasses a popular understanding of the offense nor covers an interpretation that we might "feel sure" that Congress meant to include by referring generically to a particular category of offenses, but requires a strict reading of the elements in the

criminal statute. *See Matter of Garcia*, 11 I&N Dec. 521 (BIA 1966).

If the offense, as defined, does not necessarily constitute a crime of violence under either subsection (a) or (b) of § 16 in every instance that could support a conviction, then the statute is considered to be divisible or ambiguous. *See Matter of Sweetser, supra*, at 6-7 (involving divisibility analysis applied to aggravated felony convictions); *Matter of Alcantar, supra*, at 812; *see also Taylor v. United States, supra; Hamdan v. INS,* 98 F.3d 183 (5th Cir. 1996). Specifically, in *Sweetser*, the Board held unanimously that for purposes of determining whether an offense is a crime of violence as defined in 18 U.S.C. § 16(b), it is the criminal *conduct required* for conviction, rather than the *consequence* of the crime, that determines if an offense involves "a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* at 6-8; *see also Matter of Pichardo*, 21 I&N Dec. 330 (BIA 1996) (addressing convictions alleged to involve firearms). In making this determination, we look to the elements of the offense for which the respondent was convicted, as reflected in the record of conviction. *See* section 240(c)(3)(B) of the Act, 8 U.S.C. § 1229a(c)(3)(B) (Supp. II 1996); 8 C.F.R. § 3.41 (1999); *see also Matter of Rodriguez-Cortes*, 20 I&N Dec. 587, 588 (BIA 1992) (including an "information" as part of the "record of conviction"); *Matter of Short*, 20 I&N Dec. 136, 137-38 (BIA 1989) (citing *Matter of Esfandiary*, 16 I&N Dec. 659, 661 (BIA 1979)) (defining the "record of conviction" as including the indictment, plea, verdict, and sentence).

In the case before us, as in *Matter of Sweetser*, the statute under which the respondent was convicted also is divisible. The statute on which the respondent's conviction is based covers both operating and driving a vehicle, and the record of conviction does not specify whether the respondent's conviction was based on the conduct of "operating" or "driving." As discussed above, the "substantial risk" or probability "that force will be used in committing the offense" requires that the conviction be based on some action on the part of the perpetrator that could result in the use of destructive force or violence to accomplish the criminal end. I can find no evidence of this in the record before us.

Although the Service insists that "operating" a motor vehicle while intoxicated, in violation of the Texas statute, relates to "putting the car in motion," one can "operate" a vehicle in Texas without causing it to move and without being in actual physical control of the vehicle. Indeed, "operating" includes, but is not limited to, "driving." *Denton v. State,* 911 S.W.2d 388, 389 (Tex. Crim. App. 1995) (en banc)*.* The offense of "operating" requires no more than that "'the defendant performed an act to affect the functioning of the vehicle.'" *Barton v. State,* 882 S.W.2d 456, 459 (Tex. App. 1994) (quoting *Reddie v. State*, 736 S.W.2d 923, 926 (Tex. App. 1987)). As discussed above, changing a flat tire or turning on the heater affects the *functioning* of a vehicle, and could sustain a conviction, even if the

defendant was not in actual control of the vehicle or driving it in any way.

The record does not specify the basis for the respondent's conviction, other than that he operated the vehicle in a public place. As clarified in *Barton v. State, supra*, "the plain meaning of the word [operate] requires [only] 'effort, the doing of something by the operator.'" *Id.* at 459 (quoting *Reddie v. State, supra*, at 926). The difficulty with the majority's analysis is that it leads to a conclusion that there is a substantial risk that physical force will be used by one who changes a flat tire while intoxicated or simply starts up the heater, or even lends his or her vehicle to another. However, there is no rational basis on which to conclude that there is a substantial risk of force involved in the respondent's having "operated" his vehicle in this way.

Neither the majority nor the concurring Board Member appears to understand the principle of divisibility as applied to an aggravated felony conviction alleged to constitute a crime of violence under § 16(b). The phrases "by its nature" and "substantial risk" do not obviate the divisibility analysis. "In cases such as this, where the statute encompasses a wide range of behaviors that may or may not result in immigration consequences . . . the categorical approach allows a court to go beyond the mere fact of conviction." *Matter of Sweetser, supra*, at 7. Thus, if a statute encompasses courses of conduct that both do and do not involve a substantial risk that physical force may be used in committing the offense, we must ascertain the particular conduct for which the respondent was convicted. *See Hamdan v. INS, supra*, at 187 (stating that "as a general rule, if a statute encompasses both acts that do and do not involve moral turpitude," a finding of moral turpitude cannot be sustained).

In the absence of specific information in the record of conviction, we examine the elements of the statute, which, at its minimum, would support the respondent's conviction. *Matter of Sweetser, supra; see also Hamdan v. INS, supra,* at 189 (citing *United States ex rel. Guarino v. Uhl,* 107 F.2d 399 (2d Cir. 1939), specifying the general rule that, absent specific evidence to the contrary in the record of conviction, the statute must be read at the minimum criminal conduct necessary to sustain a conviction). It is here that we determine the offense that constituted the basis for the conviction and make our judgment whether the crime of which the respondent was convicted "by its nature" involves a substantial risk that physical force may be used. We do not abandon our traditional analysis because the words "by its nature" or "substantial risk" appear in 18 U.S.C. § 16. Instead, we apply our divisibility analysis to each set of facts in a statute under which the respondent might have been convicted. In other words, we apply the definition of "crime of violence" to the particular elements—or part of the criminal statute—on which the respondent's conviction is based.

In *Matter of Sweetser, supra*, we did not judge the respondent's offense by reviewing the statute as a whole and determining that, while some convictions might be attributable to negligence, others might be attributable to

conduct involving a substantial risk of the use of physical force. We judged Sweetser's offense by looking to the section of the statute under which he was convicted and applying our analysis of what constitutes a crime of violence to that section.

Although, in *Sweetser*, there was affirmative evidence that the respondent had been convicted of a course of negligent conduct that by its nature did *not* encompass a substantial risk of the use of physical force, it is not incumbent upon a respondent to provide such evidence. It is the Service's burden to establish that the respondent was convicted as charged in the Notice to Appear. *See* section 240(c)(3)(A) of the Act; 8 C.F.R. § 240.8 (1999). No such evidence appears in this record. *See Matter of Pichardo, supra; Matter of Teixiera*, 21 I&N Dec. 316 (BIA 1996).

To summarize, in the absence of such evidence in the record, we evaluate the nature of the crime at its minimum—that is, we determine its nature according to the narrowest course of conduct that will sustain a conviction under the statute, and then determine whether such a conviction would constitute the immigration violation charged. *Matter of Sweetser, supra*, at 6-8. Applying this test to the divisible Texas statute, which covers both "operating" and "driving," I cannot conclude that, by its nature, there is a substantial risk that physical force may be used against persons or property by an individual who "operates" his vehicle while "under the influence."


## IV. CONCLUSION


To conclude that a conviction for driving under the influence is a crime of violence under § 16(b), the respondent's conviction for driving under the influence under the Texas statute must, by its nature, present a substantial risk that physical force will be used against the person of property of another in the course of committing the offense. The "categorical" approach taken by the Supreme Court in *Taylor v. United States, supra*, and followed by the Board in *Matter of Alcantar, supra*, and *Matter of Sweetser, supra*, relies upon an examination of the record before us to determine whether it reveals that the offense of which the respondent was convicted satisfies the terms of 18 U.S.C. § 16(b). On the record before us, I cannot agree that the respondent's conviction satisfies that standard. Consequently, I do not find that the charge of removability, due to an aggravated felony conviction for a crime of violence, has been sustained and supports an order of removal. Consequently, I would dismiss the charge and terminate the proceedings.